UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PATRICIA S. GARDINER | : | |
| | : | |
| v. | : | C.A. No. 14-482ML |
| | : | |
| CAROLYN COLVIN | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on November 4, 2014 seeking to reverse the decision of the Commissioner.  On May 29, 2015, Plaintiff filed a Motion to Reverse with a Remand for Rehearing of the Commissioner's Final Decision.  (Document No. 8).  On July 14, 2015, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion

to Reverse with a Remand for Rehearing of the Commissioner's Final Decision (Document No. 8)

be DENIED.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for SSI (Tr. 231-239) and DIB (Tr. 240-243) on February 4, 2013

alleging disability since November 18, 2011.  (Tr. 265).  Plaintiff's date last insured for DIB is

December 31, 2013.  The applications were denied initially on July 19, 2013 (Tr. 109-122, 123-136)

and on reconsideration on October 17, 2013.  (Tr. 139-154, 155-170).  On October 25, 2013,

Plaintiff requested an Administrative hearing.  (Tr. 186).  On March 3, 2014, a hearing was held

before Administrative Law Judge Donald P. Cole (the "ALJ") at which time Plaintiff, represented

by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 37-83).  The ALJ issued an

unfavorable decision to Plaintiff.  (Tr. 21-36).  The Appeals Council denied Plaintiff's request for

review on September 5, 2014.  (Tr. 1-3).  Therefore the ALJ's decision became final.  A timely

appeal was then filed with this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 by not finding her carpal tunnel syndrome

("CTS") to be a severe impairment and by failing to properly evaluate the opinions of her treating

primary care physician and treating mental health therapist.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's Step 2 conclusion

is supported by substantial evidence and that Plaintiff has shown no error in the ALJ's evaluation

of the medical opinion evidence.

### III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1ˢᵗ Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1ˢᵗ Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1ˢᵗ Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8ᵗʰ Cir. 1986).   In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1ˢᵗ Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or

combination of impairments which significantly limit her physical or mental ability to do basic work

activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past

work) prevent her from doing other work that exists in the national economy, then she is disabled.

20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through

four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138,

144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

        In determining whether a claimant's physical and mental impairments are sufficiently severe,

the ALJ must consider the combined effect of all of the claimant's impairments, and must consider

any medically severe combination of impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings

as to the effect of a combination of impairments when determining whether an individual is disabled.

Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

        The claimant bears the ultimate burden of proving the existence of a disability as defined by

the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and

Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

-10-

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was thirty-eight years old on the date of the ALJ's decision.  Plaintiff completed high school and worked in the relevant past as a customer service representative, food server and vocational developer.  (Tr. 270).  Plaintiff alleged disability due to depression, anxiety, back pain and post-traumatic stress disorder.  (Tr. 269).  She subsequently added a claim of disability due to bilateral CTS.  (Tr. 42, 50).

### A.      The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ determined that Plaintiff's degenerative disc disease, affective disorder and anxiety disorder were "severe" impairments within the meaning of 20 C.F.R. §§ 404.152(c) and 416.920(c).  (Tr. 27).  The ALJ determined that Plaintiff's distal median neuropathy , i.e., CTS, was not a "severe" impairment.  Id. At Step 3, the ALJ found that Plaintiff's impairments did not, either singly or in combination, meet or medically equal any of the Listings.  Id.  As to RFC, the ALJ found that Plaintiff could perform a limited range of light work subject to certain postural, environmental and nonexertional restrictions including the use of a immobilizing wrist sprint on her dominant arm.  (Tr. 29).  Based on this RFC and the testimony of the VE, the ALJ found at Step 4 that Plaintiff was unable to perform any of her past relevant work but, found at Step 5, that Plaintiff was capable of making a successful adjustment to other unskilled jobs at the light and sedentary level which are available in the economy.  (Tr. 35-36).  Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 36).

### B.      The ALJ did not err at Step 2 in finding Plaintiff's CTS to be a non-severe impairment.

Plaintiff contends that substantial evidence does not support the ALJ's Step 2 finding that her CTS was not a severe impairment.  In particular, Plaintiff faults the ALJ's interpretation of the results of an EMG study as showing only a slight abnormality.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe"

when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In her Step 2 analysis, the ALJ thoroughly discussed Plaintiff's CTS in the context of the record as a whole and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" impairment. (Tr. 27).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). (emphasis added). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time. Id. The ALJ found that Plaintiff did not meet that burden as to her CTS, and Plaintiff has shown no error in her finding.

The ALJ found that "[t]he medical and other evidence establish that [Plaintiff's]...distal median neuropathy causes only a slight abnormality that would have no more than a minimal effect on her ability to work." (Tr. 27.) In support of that finding, the ALJ explained:

> After this condition was diagnosed following an upper extremity
> EMG showing only a slight abnormality with evidence consistent

with carpal tunnel syndrome[,] [Plaintiff's] only treatment for this condition was two physical therapy sessions for her wrist in early 2013. [Plaintiff's] physical examinations fail to show any affirmatively positive findings regarding her upper extremities. While she is planning [to see] a specialist for this impairment, this issue currently is not developed in the record sufficiently to show any more than a slight abnormality, which would have no more than a minimal effect on her ability to work. This condition was being managed medically and no aggressive treatment was recommended or anticipated for this condition. Accordingly, the undersigned finds [Plaintiff's] medically determinable impairment of distal median neuropathy is nonsevere.

(Tr. 27). The ALJ also observed that "It does not appear that carpal tunnel syndrome was formally diagnosed in the record based on objective signs and findings" and, "[r]egardless of the precise diagnosis, the evidence as described above does not establish that the condition is severe at this time." (Tr. 27, n.1). See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of a condition, "of course, says nothing about the severity of the condition") (citing Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosable impairment not necessarily disabling)).

Plaintiff argues that the ALJ substituted his own lay opinion in characterizing the motor and sensory nerve conduction tests as "showing only a slight abnormality." (Document No. 8 at p. 10). The record does not support Plaintiff's argument. The EMG testing performed in December 2014 showed normal motor nerve conduction of the bilateral median and ulnar nerves, and normal sensory nerve conductions of the bilateral ulnar nerves and left median nerve. (Tr. 695). The only abnormal finding appeared in a sensory conduction study of the right median nerve showing "prolonged distal latency with normal amplitude." Id. Further, just prior to the EMG testing, Plaintiff denied weakness in her hands, and an examination revealed normal reflexes, muscle tone, and muscle bulk, with just "mild weakness in the [muscle between the wrist and the base of the thumb on her] right

hand[, measuring] 4++/5," and decreased pinprick sensation to the median distribution on the right hand. (Tr. 690). The ALJ accurately described the test results.

Plaintiff also challenges the ALJ's assertion that her "physical examinations fail to show any affirmatively positive findings regarding her upper extremities." (Document No. 8 at p. 10). Again, the record does not support Plaintiff's assertion. For example, in September 2012, Plaintiff told her provider, Carla M. Martin, M.D., that she was experiencing right wrist pain, but an examination revealed a normal range of motion and normal strength in Plaintiff's digits, wrist, and right upper extremity. (Tr. 357-358). In February 2013, Plaintiff reported wrist pain, but her provider, Erin Shallcross, N.P., observed full strength and a full range of motion in the right wrist. (Tr. 331-332). Ms. Shallcross diagnosed right wrist pain and recommended that Plaintiff use ice or take Ibuprofen; she also prescribed a wrist splint to immobilize the tendon. Id. As the ALJ accurately noted, Plaintiff's examination findings were also normal in January 2014. (Tr. 696-697). On that date, Curtis E. Doberstein, M.D. observed that Plaintiff wore bilateral carpal tunnel braces, but the examination showed that she had good muscle bulk and tone, full strength in all muscle groups (with the exception of quadriceps testing), normal sensation to light touch, and normal reflexes. (Tr. 696). The hearing testimony also highlights the absence of evidence of CTS in the record. (Tr. 58). When asked whether the record contained any physical examination findings to support a diagnosis of CTS, Plaintiff's counsel candidly responded, "Just at the time of the EMG, and it was quite limited. I mean, limited in terms of it doesn't look like they did a lot of testing." Id. The ALJ replied, "[a]ll right, that's probably why I didn't notice much." Id. There is ample evidence in the record to support the ALJ's Step 2 finding.

Plaintiff next asserts that the EMG report and physical examination performed the same day undermine the medical opinions provided by the state agency medical consultants – to which the ALJ assigned great weight – because that evidence did not exist at the time their opinions were provided.  (Document No. 8 at p. 11).  Again, there is no merit to this challenge.  In July 2013, Colleen Ryan, M.D. opined that Plaintiff had no manipulative limitations.  (Tr. 116).  In October 2013, Youssef Georgy, M.D., gave the same opinion.  (Tr. 147, 163).  Although neither physician reviewed the EMG study that was produced just two months after Dr. Georgy's opinion, they did analyze evidence of Plaintiff's complaints of wrist pain as well as her normal physical examination.  For example, both doctors discussed a February 2013 treatment note in which Plaintiff reported right wrist pain lasting one month, especially at night, that Plaintiff believed was caused by her sleeping position.  (Tr. 118, 165, 331).  In that treatment note, the provider observed that Plaintiff had a full range of motion and full strength.  Id.  Based on the evidence, which included that medical note and others, Drs. Ryan and Georgy concluded that Plaintiff's "wrist tendinitis appears to be an overuse syndrome which does not result in significant functional limitations and is therefore considered nonsevere." (Tr. 118, 165).  A later EMG study showing a latency and "mild" weakness in part of Plaintiff's hand does not disturb the substantial evidence provided by the treatment notes that consistently showed a full range of motion and full strength.

Finally, Plaintiff argues that "vocational expert testimony shows that additional limitations related to carpal tunnel syndrome may have resulted in a finding of disability." (Document No. 8 at p. 11).  Again, however, the record simply does not support more restrictive limitations than those found by the ALJ.  At the hearing, the ALJ asked the VE if an individual with Plaintiff's limitations could still perform sedentary work if she also had to wear a wrist splint on the dominant hand.  (Tr.

-16-

76-77).  The expert testified that she could.  (Tr. 77).  It was not until the ALJ posed an additional

hypothetical question, limiting the individual to just occasional fine manipulation with the dominant

hand and reduced grip strength that the VE testified that unskilled jobs would be precluded.  (Tr. 77-

78).  As discussed above, however, the record contains no physical examination showing that

Plaintiff has reduced grip strength and none supporting a limitation to occasional fine manipulation

with the right hand.  The ALJ thoroughly considered Plaintiff's CTS and his RFC limited her to

work that can be performed with an immobilizing wrist splint on her dominant hand.  Plaintiff has

shown no error.

> **C.     The ALJ's evaluation of Dr. Menon's Opinions did not violate the treating physician rule.**

Dr. Menon, Plaintiff's primary care physician, opined that Plaintiff had moderately severe

limitations in the areas of social functioning and response to customary work pressures.  (Tr. 684).

The ALJ gave these opinions "little weight" because they are outside of Dr. Menon's area of

expertise and not supported by the record as a whole.  (Tr. 34).[1]

Because a treating physician is typically able to provide a detailed longitudinal picture of a

patient's impairments, an opinion from a treating source is generally entitled to considerable weight

if it is well supported by clinical findings and not inconsistent with other substantial evidence of

record.  20 C.F.R. § 404.1527(d);  see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass

2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with

other substantial evidence in the record, even if that evidence consists of reports from non-treating

doctors.").  The amount of weight to which a treating source opinion is entitled depends in part on

---

[1] The ALJ also described the physical limitations assessed by Dr. Menon to be "quite extreme" and unsupported by the record.  (Tr. 34).  Plaintiff does not challenge this finding on appeal.

the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2). Further, under 20 C.F.R. § 404.1527(e), the ultimate issue of disability, i.e., inability to work, is one reserved to the Commissioner, and no special significance is given to the source of an opinion on such issues. 20 C.F.R. § 404.1527(e)(3). These are simply "not medical opinions." 20 C.F.R. § 404.1527(e). Thus, the ultimate opinions of this treating physician that Plaintiff is unable to work is not a medical opinion covered by the scope of 20 C.F.R. § 404.1527(d)(2)'s "good reasons" requirement. See Gadoury v. Astrue, C.A. No. 08-140S, 2009 WL 2762504 at *2 (D.R.I. Aug. 27, 2009).

The ALJ properly afforded little weight to Dr. Menon's conclusory opinions. First, her opinions were not adequately detailed or supported. See 20 C.F.R. § 404.1527(C)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion."). Second, her opinions about Plaintiff's mental limitations are plainly outside her area of expertise as a primary care physician. See 20 C.F.R. § 404.1527(C)(5) ("we generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Third, the ALJ accurately observed that Dr. Menon's opinions were not consistent with the record as a whole. See 20 C.F.R. § 404.1527(c)(4). Although the record contains ample treatment notes to support the existence of non-exertional limitations, Plaintiff has shown no error in the ALJ's interpretation of the record or RFC finding. The ALJ found that Plaintiff was limited to simple, routine, repetitive tasks with breaks every two hours, and no interaction with the general public and

only occasional, limited interaction with co-workers and supervisors. (Tr. 29). These findings of the ALJ are adequately supported by the record and are entitled to deference. Further, the Plaintiff's reported activities of daily living are inconsistent with the substantial mental limitations opined by Dr. Menon.[2] For instance, the record reflects that Plaintiff is the sole care-giver for her young son, runs a household, does some limited socializing with friends and is able to participate in certain activities outside the home.

Finally, Dr. Menon's opinions conflicted with the assessments of the state agency consulting psychologists, Dr. Gordon and Dr. Jacobson, who both assessed only moderate limitations consistent with the ALJ's RFC finding. (Tr. 118-120, 149-151). The ALJ weighed this conflicting medical evidence and Plaintiff has shown no error in this decision to give "substantial weight" to the expert opinions of Dr. Gordon and Dr. Jacobson and "little weight" to the mental health opinions of Dr. Menon. (Tr. 33-34). "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability finding. Plaintiff has shown no error in the ALJ's evaluation of the medical evidence.

--------

[2] Plaintiff also argues that the ALJ failed to properly evaluate the opinions of his treating therapist, Mr. Boucher. The ALJ accorded his opinions little weight because they were not consistent with or supported by the record. (Tr. 34). For instance, Mr. Boucher opined that Plaintiff was severely limited in her activities of daily living. (Tr. 688). However, the record reflects that Plaintiff cared for her child, could do dishes and laundry, prepares simple meals, manages her finances, shops for groceries and clothes, drives on occasion, and attends church services. (Tr. 68, 70, 281-283, 299-301). The ALJ's evaluation of Mr. Boucher's opinions is supported by the record.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's

Motion to Reverse with a Remand for Rehearing of the Commissioner's Final Decision (Document

No. 8) be DENIED.  Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with

the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 20, 2015